UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CURTIS N. HARRIS, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:05-cv-99 |
| ) | |
| v. ) | Honorable Robert Holmes Bell |
| ) | |
| DAVID GUNDY et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) ("PLRA"), "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Plaintiff has failed to demonstrate exhaustion of available administrative remedies, the Court will dismiss his complaint without prejudice.

**Discussion**

I.      Factual allegations

Plaintiff is presently incarcerated at Marquette Branch Prison, but the events giving rise to his complaint occurred while he was incarcerated in the Oaks Correctional Facility. In his *pro se* complaint, he sues the following Oaks employees: Warden David Gundy; Inspector William Atkinson; Resident Unit Manager (RUM) Ron Cole; RUM Dennis Abbott; Lieutenant (unknown) Kowalski; Case Manager Mary Schiebner; Officers (unknown) Sanders, (unknown) Baldwin,

(unknown) Ban Velen; Nurse (unknown) Froelich; Grievance Coordinator Scott Pelton; Supervisor (unknown) Sharp; and Sergeant (unknown) Norton. He also sues Jim Armstrong of the Michigan Department of Corrections Prisoner Affairs Office.

Plaintiff was transferred to Oaks and classified to administrative segregation in August 2002, after he was convicted of a major misconduct for assaulting a correctional officer. Plaintiff claims that he filed grievances against Defendants Schiebner and Abbott in 2003, complaining that he was not getting proper review by the Security Classification Committee (SCC) and the Housing Unit Team regarding his security classification. On October 16, 2003, Plaintiff asked Shiebner if he was on the list to see the SCC. Schiebner allegedly said "yes," but told him that he would not be released from segregation because he had been filing grievances.

On October 24, 2003, RUM Cole interviewed Plaintiff regarding a grievance he wrote against Schiebner for swearing and vulgarity. When Plaintiff refused to sign-off on the grievance, Cole allegedly became angry and threatened to "get" Plaintiff no matter where he goes.

Plaintiff also makes allegations concerning an incident that occurred on December 28, 2003. He claims that Defendants Kowalski, Norton, Ban Velen, Sanders, Shillings, and Baldwin responded to a disturbance created by another prisoner in the segregation unit. As the officers prepared to spray the prisoner with chemical agents, Plaintiff informed them that he was an asthmatic and asked to be removed from the area. Plaintiff claims that he uses two inhalers to control his asthma. While the officers allegedly moved another asthmatic prisoner to another area before they sprayed the chemical agents, Plaintiff was left in his cell. When the chemical agents were used, Plaintiff began coughing and felt like he was suffocating. He also had burning in his skin, eyes, nose and mouth. After suffering for twelve to fifteen minutes, Defendants Baldwin and Sanders came to

remove Plaintiff from his cell. Plaintiff claims that after he walked about ten feet, he fainted and fell to the floor. Plaintiff claims that he suffered head and back injuries from the fall. Defendants Baldwin, Sanders and Kowalski dragged Plaintiff by his handcuffs to the segregation yard module. When Plaintiff asked the officers why he was not removed before the chemical agents were used, they claimed that Nurse Froelich told them that Plaintiff was not an asthmatic and did not have problems with chemical agents. When Nurse Froelich checked Plaintiff, he asked her if she told the officers that he was not an asthmatic. Froelich denied making any such statement to the officers. Plaintiff claims that Defendants were aware of his medical condition, but they were engaged in "a conspiracy, retaliation, an intent to harm, punish and possible death."

Plaintiff seeks injunctive relief, as well as compensatory and punitive damages of $3.7 million.

## II.     Lack of exhaustion of available administrative remedies

Plaintiff has failed sufficiently to allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement *sua sponte. Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his

complaint, if the decision is available.[1] *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). In addition, a prisoner must specifically mention the involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

The MDOC provides a three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective 4/28/03). In order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims for the first time at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). Where a prisoner has set forth a claim in his Step I grievance, he may present additional factual detail at Steps II and III that clarify his allegations at Step I. *Id.* However, raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion. *Id.* at 576 n.4. Plaintiff provided the Step II and Step III grievance appeals for three grievances, but failed to provide the Step I grievances. Moreover, Plaintiff failed to specifically allege the issues and individuals he grieved

---

[1]To assist prisoners in meeting this requirement, this Court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. LCIVR 5.6(a). Plaintiff has chosen to forego use of the form complaint in this action.

at Step I. As a result, the Court is unable to determine whether Plaintiff properly grieved each of his claims against each of the named Defendants. Even if Plaintiff exhausted some of his claims against some of the Defendants, his complaint would be subject to dismissal under the "total exhaustion rule." *See Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005) (a civil rights action containing both exhausted and unexhausted claims must be dismissed for lack of total exhaustion).

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright v. Morris*, 111 F.3d at 414, 417 (1997). Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman v. Francis*, 196 F.3d 641, 645 (1999); *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Smeltzer v. Hook*, 235 F. Supp. 2d 736, 746 (W.D. Mich. 2002) (citing *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997)). Accordingly, the Court will dismiss his action without prejudice.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's action without prejudice because he has failed to show exhaustion as required by 42 U.S.C. § 1997e(a).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

A Judgment consistent with this Opinion will be entered.


Date:   August 11, 2005            /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   CHIEF UNITED STATES DISTRICT JUDGE